189 P.3d 477

**STATE of Idaho, Plaintiff–Respondent,**

v.

**JEFFREY BRIAN GROSS,**
**Defendant–Appellant.**

No. 32614.

Court of Appeals of Idaho.

July 15, 2008.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

Jeffrey Brian Gross appeals from his judgment of conviction and five-year sentence for felony driving under the influence (DUI). Because we conclude that the prosecutor made several improper comments during closing argument that cumulatively amounted to fundamental error depriving Gross of a

fair trial, we vacate Gross's judgment of conviction and remand for a new trial.

## I.

## FACTS AND PROCEDURE

According to the state's evidence at trial, on January 25, 2005, a police officer, who was following a vehicle driven by Gross observed Gross signal a right turn, signal a left turn, signal a right turn again, and then turn left. The officer next observed Gross cross over the center line twice. The officer stopped Gross, who was accompanied in the vehicle by his girlfriend. The officer observed that Gross had glassy, bloodshot eyes and slurred speech. The officer asked Gross if he had been drinking alcohol, and Gross indicated that he had not consumed any alcohol.

The officer asked Gross to exit the vehicle and, once Gross exited, the officer detected the odor of an alcoholic beverage, but Gross continued to deny having consumed any alcohol. However, when the officer asked Gross's girlfriend whether Gross had been drinking, she indicated that he had. Gross again denied drinking any alcohol. The officer conducted a horizontal gaze nystagmus field sobriety test, which indicated to the officer that Gross was under the influence of alcohol. Gross refused further field sobriety tests. The officer arrested Gross. Once transported to jail, Gross refused to take a blood alcohol concentration test. The state charged Gross with felony DUI, I.C. §§ 18–8004, 18–8005(5)(7), and being a persistent violator, I.C. § 19–2514.

At trial, Gross's girlfriend testified that certain portions of the conversation between Gross and the officer were not on an audio recording of the stop presented to the jury and that Gross consumed no more than one or two drinks prior to the stop. The state then played for the jury an audio recording of a telephone conversation between Gross and his mother that occurred while Gross was in jail. During the conversation, Gross admitted to his mother that he had consumed two alcoholic beverages prior to the stop. Gross testified that the turn signal in his

girlfriend's vehicle, which Gross was driving at the time of the stop, did not operate automatically, and he therefore had to manually work it up and down. Gross also testified that he did not cross the center line and that he declined further field sobriety tests only because the officer who stopped him and another officer who subsequently arrived at the scene were "laughing and joking" at him during the gaze nystagmus test. Gross testified that the audio recordings of the stop must have been edited because the recording did not contain statements made by the officers ridiculing Gross. Gross admitted that, when he repeatedly told the officer he had not had any alcohol, "it wasn't the truth." When the prosecutor cross-examined Gross regarding why Gross had not been truthful with the officer, Gross testified that he had only had two beers but had heard that police are unlikely to believe motorists who say they have had only two beers.

The jury found Gross guilty of DUI. Gross stipulated that he had a prior felony DUI conviction, and the state dismissed the persistent violator enhancement. The district court sentenced Gross to a fixed five-year term, to be served consecutive to two concurrent sentences for prior DUI convictions. Gross filed an I.C.R. 35 motion to reduce his sentence, which the district court denied.[1] Gross appeals.

## II.

## ANALYSIS

On appeal, Gross challenges several statements made by the prosecutor during closing argument, the reasonableness of his sentence, and the district court's denial of his I.C.R. 35 motion for reduction of sentence. Because we conclude that the prosecutor's statements require us to vacate Gross's judgment of conviction, the sentencing and Rule 35 issues raised by Gross are moot and we express no opinion on those issues.

Gross asserts that the prosecutor committed misconduct by disparaging Gross and defense counsel, vouching for the credibility

---

1. The trial was held before District Judge Renae J. Hoff. However, the sentencing and Rule 35 proceedings were conducted before District Judge Juneal C. Kerrick.

of the arresting officer and the prosecutor, and appealing to the passions and prejudices of the jury. Gross did not object in the district court to any of the prosecutor's comments, and the district court did not limit the prosecutor's comments or provide the jury with curative instructions for the statements that Gross now cites.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

■ When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *Id.* Prosecutorial misconduct rises to the level of fundamental error when it is calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *State v. Kuhn*, 139 Idaho 710, 715, 85 P.3d 1109, 1114 (Ct.App.2003). Prosecutorial misconduct rises to the level of fundamental error only if the acts or comments constituting the misconduct are so egregious or inflammatory that any ensuing prejudice could not have been remedied by a curative jury instruction. *Id.* The rationale of this rule is that even a timely objection to such inflammatory statements would not have cured the inherent prejudice. *Id.* However, even when prosecutorial misconduct has resulted in fundamental error, the conviction will not be reversed when that error is harmless. *Field*, 144 Idaho at 571, 165 P.3d at 285. The test for whether prosecutorial misconduct constitutes harmless error is whether the appellate court can conclude, beyond a reasonable doubt, that the result of the trial would not have been different absent the misconduct. *State v. Pecor*, 132 Idaho 359, 368, 972 P.2d 737, 746 (Ct.App.1998).

When the defendant did not object at trial, our inquiry is, thus, three-tiered. *See Field*, 144 Idaho at 571, 165 P.3d at 285. First, we determine factually if there was prosecutorial misconduct. If there was, we determine whether the misconduct rose to the level of fundamental error. Finally, if we conclude that it did, we then consider whether such misconduct prejudiced the defendant's right to a fair trial or whether it was harmless.

All of the statements that Gross takes issue with occurred during the prosecutor's closing argument. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Timmons*, 145 Idaho 279, 288, 178 P.3d 644, 653 (Ct.App.2007). Its purpose is to enlighten the jury and to help jurors remember and interpret the evidence. *Id.; State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct.App.1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003).

■ Gross asserts that the prosecutor committed misconduct by repeatedly calling Gross a "liar" for Gross's false statements to the officer that he had not consumed any alcoholic beverages. Gross also complains of the prosecutor's statement that Gross did not correct his false statements to the officer in the seven months between his arrest and his testimony at trial. Closing argument should not include the prosecutor's personal opinions and beliefs about the credibility of a witness or inflammatory words employed in describing the defendant. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct.App. 2007). A prosecutor may not directly or indirectly comment on a defendant's invocation of his or her constitutional right to remain silent, either at trial or before trial, for the purposes of inferring guilt. *Id.* Generally, it may be improper to label the defendant as a "liar," for testimony given in his or her defense. *See Kuhn*, 139 Idaho at 716, 85 P.3d at 1115. It is not misconduct, however, to refer to the defendant as a liar if the

defendant admitted to lying in connection with the case. Gross testified that he falsely told the officer that he had not consumed any alcoholic beverages and that he had intended to come forward with the truth prior to trial. Gross also placed his credibility in issue when he testified that the audio recording omitted portions of the conversation where the officers ridiculed Gross, implying that the police had fabricated evidence by removing portions of the audio recording. The prosecutor, however, referenced Gross's lie twice during his initial closing argument and called Gross a "liar" five separate times during rebuttal. Even when the defendant admitted to lying in connection with the case, excessive labeling of the defendant as a "liar" could be viewed as an improper attempt to obtain a finding of guilt by disparaging the defendant before the jury. In the present case, we conclude that the prosecutor's excessive use of the term "liar" is troubling but did not amount to misconduct given that Gross placed his credibility in issue and admitted to lying in connection with the case.

 Gross next asserts that the prosecutor committed misconduct by disparaging defense counsel and vouching for his own credibility. A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips,* 144 Idaho at 86 n. 1, 156 P.3d at 587 n. 1. It is also misconduct for the prosecution to make personal attacks on defense counsel in closing argument. *Sheahan,* 139 Idaho at 280, 77 P.3d at 969; *State v. Page,* 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *Timmons,* 145 Idaho at 289, 178 P.3d at 654; *State v. Brown,* 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct.App.1998); *State v. Baruth,* 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct.App.1984).

Gross asserts that the prosecutor disparaged defense counsel by implying that defense counsel participated in or facilitated Gross's false statements. During trial, defense counsel elicited testimony from Gross

that he followed defense counsel's advice in deciding not to come forward until trial with his admission to having consumed two beers. During closing argument, the prosecutor referred to this testimony as a "rare insight into the attorney-client relationship." In response, defense counsel stated in his closing argument that he took the prosecutor's argument "a little personal" as an attack on counsel's truthfulness. Defense counsel argued that he had an ethical duty to be candid and not lie. He said that "more than once" he had "raised [his] right hand in front of different tribunals" and swore to uphold and protect the constitution including when he joined the military during the Gulf War. Gross now complains of the prosecutor's following statements in rebuttal:

> So for all his Army work, everything he did in Iraq, raising his hand left and right, he came in here and didn't give me the truth, not before I found it out on August 15th at the jail. Whether that's lying or making an admission, you decide. But I didn't have the truth that day. I didn't have it.
>
> And this is all being facilitated by Mr. Gross, not [defense counsel]. He's doing his job. I want you to understand that. He told you he's a liar.

Although the use of the pronoun "he" makes it difficult to determine with certainty when the prosecutor was referring to defense counsel or Gross, the prosecutor was clearly referring to defense counsel while commenting on "Army work" and "everything he did in Iraq." From these references, the jury was likely to understand the prosecutor's remarks as accusing defense counsel of lying or facilitating Gross's lying. The comments thus disparaged defense counsel's argument and his integrity. Indeed, the prosecutor appears to have recognized that he had overstepped the bounds of proper closing argument with this attack on defense counsel because he attempted to immediately withdraw the attack by stating that Gross, not defense counsel, was the liar. The prosecutor committed misconduct by disparaging defense counsel with this statement.

 Gross argues that the prosecutor also engaged in misconduct by suggesting

that the jury should trust and believe the officer and the prosecutor because they represented the state and, therefore, must be ethical. Gross cites the prosecutor's assertions at the beginning of his closing argument that his "client" had a right to a fair trial and was seeking only the "truth." Gross also cites the following statement: "I want you to take that motive and compare it against what he wants. He wants not guilty unequivocally. That's all he wants. When you listen to the evidence, think about the motives of the two parties here, the truth and not guilty." The prosecutor repeatedly used the word "truth" in reference to the goals of himself and his "client." As discussed above, Gross placed the credibility of himself and the arresting officer at issue by testifying that the audio recording lacked statements by the officers ridiculing Gross. Thus, the prosecutor was entitled to challenge Gross's credibility by pointing out that his motive was to obtain a jury finding of not guilty. However, rather than basing his comments on the evidence presented at trial, the prosecutor made general pleas for the jury to believe his case because he and his "client"—presumably the state—were only motivated by the truth. Therefore, the prosecutor committed misconduct in this instance.

■ Gross also asserts that the prosecutor improperly vouched for himself and the arresting officer in response to Gross's testimony that the audio recording was missing part of the encounter after the stop. During closing argument, defense counsel challenged the officer's credibility by referring to the officer's acknowledgement that the audio recording omitted the beginning of the contact. Defense counsel stated: "If this officer has nothing to hide, why is he cutting the audio off and on?" Gross asserts the prosecutor impermissibly vouched for his own credibility and the officer's credibility by arguing in rebuttal:

Do you think, honestly believe I'm going to come up here with doctored tapes and cut things out? That's ridiculous. I hope you understand that is ridiculous. I would lose my job. [The arresting officer] would lose his job. I would be on the front page of USA Today tomorrow.

Although the prosecutor was entitled to respond to defense counsel's closing argument with assertions that the officer had no incentive to manipulate the audio recording and appeared believable while testifying, the prosecutor's comments here exceeded the bounds of permissible closing argument. The prosecutor's comments improperly vouched for the completeness of the audio recording of the stop and referred to Gross's theory of selective recording or editing of the audio tape as "ridiculous." With these comments, the prosecutor further pressed his improper argument that the jury should believe the story of the officer and the prosecutor simply because they were representatives of the state, rather than because the state's evidence and theory of the case was more convincing. He referred to facts not in evidence by representing that he and the officer would lose their jobs if they presented altered evidence and asked the jurors to make their decision based upon the officer's and the prosecutor's self-proclaimed moral rectitude and integrity rather than addressing the evidence.

■ Gross next asserts that the prosecutor appealed to the passions or prejudices of the jury by asking the jury to imagine themselves as the victim. Appeals to emotion, passion or prejudice of the jury through use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588; *see also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *Pecor*, 132 Idaho at 367, 972 P.2d at 745; *State v. Burke*, 110 Idaho 621, 630, 717 P.2d 1039, 1048 (Ct. App.1986); *Baruth*, 107 Idaho at 657, 691 P.2d at 1272. Gross cites the prosecutor's statement that Gross was driving "in the opposite lane of traffic while under the influence of alcohol. Imagine yourself coming down that other lane. You decide." In rebuttal, the prosecutor continued this line of argument, stating: "My client wants to protect you in case you're the person that happens to be coming down that lane. My client wants to keep you off the front page of that newspaper." The prosecutor acted improperly by asking the members of the jury to imagine themselves as a hypothetical victim of Gross's alleged drunk driving and assert-

ing that "his client" wanted to protect the members of the jury from becoming that hypothetical victim. With these comments, the prosecutor did not ask the jury to rely on the evidence but, rather, urged the jury to find Gross guilty of the DUI charge based on a fear of being the victim of a drinking and driving accident serious enough to be on the front page of a newspaper. These comments constituted an improper appeal to the emotion, passion or prejudice of the jury through the use of inflammatory tactics.

Finally, we address whether the prosecutor's improper comments constituted fundamental error that prejudiced Gross's case. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Thus, rather than address the prejudicial effect of the improper comments individually, we will address their cumulative effect.

When considered cumulatively, the prosecutor's improper comments constituted fundamental error. Prosecutorial misconduct rises to the level of fundamental error when calculated to inflame the minds of jurors and arouse prejudice or passion against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence. *Kuhn*, 139 Idaho at 715, 85 P.3d at 1114. The prosecutor repeatedly disparaged defense counsel, asked the jury to rely on the officer's and prosecutor's self-proclaimed trustworthiness and integrity and, most troubling, appealed to the emotion and passion of the jury by asking its members to step into the shoes of a hypothetical victim of Gross's alleged drunk driving. All of these improper arguments sought a finding of guilt based on factors outside the evidence. These arguments cumulatively rose to the level of fundamental error because even timely objections or curative instructions from the district court would not have removed the taint of the prosecutor's improper appeals to the emotion of the jury and other factors outside the evidence.

We next address whether the cumulative effect of the prosecutorial misconduct was harmless beyond a reasonable doubt. The evidence of Gross's intoxication was not overwhelming. The state charged Gross with DUI in violation of I.C. § 18-8004 and proceeded on a theory of alcohol intoxication. The state was required to prove that Gross had consumed sufficient alcohol to influence or affect his driving of the motor vehicle. *See State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). The officer testified that he believed Gross was intoxicated based on his observations of Gross's erratic use of his turn signal, Gross's crossing the center line on the road, and the results of the gaze nystagmus test. The officer also testified that Gross had bloodshot, glassy eyes, swayed while standing, slurred his speech, and smelled of an alcoholic beverage while standing face to face with the officer. Other evidence, however, could have created a reasonable doubt as to whether Gross was intoxicated. Gross's girlfriend testified that she noticed a few hours prior to the stop that Gross looked "like somebody that had very bad allergies" because he had been affected by fumes while working on her vehicle in a garage. She also testified as to problems with the turn signal and steering on her vehicle, which Gross was driving. Gross also testified as to these mechanical problems and indicated that he was exhausted at the time of the stop, which occurred late at night on a day when he had begun working very early in the morning. Gross additionally testified that his eyes were impaired by his profession as a welder, compromising his ability to obtain a favorable result in the gaze nystagmus test. Although Gross admitted that he had lied to the officer regarding his consumption of alcoholic beverages, the audio recording of Gross's phone call from jail and the testimony of himself and his girlfriend all indicated that he had consumed no more than two beers.

Thus, there was evidence that, while Gross had consumed a few alcoholic beverages, he may not have been over the legal limit for

DUI. The evidence supported a finding of innocence or a finding of guilt. Under these circumstances, the prosecutor's improper statements were not harmless. We cannot say beyond a reasonable doubt that the jury would have convicted Gross absent the improper comments and, therefore, we must vacate Gross's judgment of conviction.

## III.

## CONCLUSION

The prosecutor made numerous improper comments during his closing argument, and the comments cumulatively rose to the level of fundamental and prejudicial error. Because we must vacate Gross's judgment of conviction, the sentencing issues raised by Gross are moot. We vacate Gross's judgment of conviction and remand for a new trial.

Chief Judge GUTIERREZ and Judge LANSING, concur.

